# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA


CAROLE K. BROWDY, M.D.                          CIVIL ACTION

VERSUS                                          NO. 11-818-SDD-SCR

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, et al.


## RULING

This matter is before the Court on the *Cross Motions for Summary Judgment* filed by the Defendant, Hartford Life & Accident Insurance Company ("Hartford" or "Defendant")[1] and Plaintiff, Carole K. Browdy, M.D. ("Plaintiff").[2] Both parties have filed *Oppositions*[3] and *Replies*[4] to the motions. For the reasons which follow, the Court finds that the Defendant's motion should be GRANTED, and Plaintiff's motion should be DENIED.

## I.    FACTUAL BACKGROUND

From October 1, 2006 until August 30, 2007, Plaintiff was employed as a physician by Comprehensive Occupational Resources, L.L.C. ("CORE") to serve support personnel at the Arnold Air Force Base in Tennessee. CORE was a subcontractor of Aerospace

---

[1] Rec. Doc. No. 44. The Plan is also a Defendant in this case; however, for reasons set forth herein, the parties concede that the Plan is a nominal Defendant and should be dismissed. Thus, when the Court refers to the Defendant in this motion singularly, the Court is referring to Hartford.

[2] Rec. Doc. No. 50.

[3] Rec. Doc. Nos. 49 & 54.

[4] Rec. Doc. Nos. 54 & 64.

Testing Alliance which provided to its employees a group disability benefit plan identified as the "Group Short Term Disability and Long Term Disability Plan for Employees of Aerospace Testing Alliance-Salaried" (the "Plan"). The Plan is funded by and incorporates an insurance policy issued by Hartford. Specifically, Hartford Policy GRH/GLT-675502 provided several types of coverage, including short term disability ("STD") and long term disability ("LTD") benefits to Plaintiff who was a beneficiary of the Plan. Plaintiff contends CORE paid the premiums for her LTD benefits and she paid the premiums for her STD benefits.[5]

The Policy sets forth detailed claim procedures for the administration of handling claims and decisions. The Policy explicitly provides that Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.[6] The Policy provides that the amount of any weekly short term disability benefit payable "shall be reduced by the total amount of all Other Income Benefits, including any amount for which you could collect but did not apply."[7] Likewise, the Policy provides that any "Other Income Benefits" will also be deducted from any long-term monthly disability benefit.[8]

In 2007, Plaintiff's physicians determined that her degenerative disc disease was worsening and a scooter was medically necessary to continue her normal daily activities.[9]

---

[5] Rec. Doc. No. 49-5, p. 155 (Bates No. 000210).

[6] Rec. Doc. No. 44-1, p. 62 (Bates No. 0000049) & p. 65 (Bates No. 000052).

[7] *Id.* at p. 31 (Bates No. 000018).

[8] *Id.* at p. 46 (Bates No. 000033).

[9] *Id.* at p. 112 (Bates No. 000167).

Plaintiff's medical records indicate that she had developed numbness, pain, and decreased reflexes due to her back disease and resulting radiculopathy, which was evidence of worsening nerve damage.[10] Dr. Katharine Rathbun, Plaintiff's primary care physician, issued a report on Plaintiff's medical condition on August 21, 2007, outlining a plethora of conditions which Dr. Rathbun found to severely limit Plaintiff's ability to work.[11] Dr. Rathbun ultimately determined that Plaintiff's employer could no longer adequately accommodate her medical problems in a manner that would allow her to continue practicing medicine.[12]

Plaintiff initiated her disability claim by telephone in September of 2007 and provided detailed information to Hartford regarding her medical conditions and inability to work. Plaintiff contends that her claim for benefits was initially approved by Hartford on September 28, 2007;[13] however, she also claims that Hartford's Claims Manager continued to request information that had already been provided. On February 14, 2008, Hartford denied Plaintiff's disability claim, finding that she was not an active employee at the time she became disabled and was thus ineligible to receive short term disability benefits.[14] Hartford notes that it was more than 180 days after it denied Plaintiff's STD benefits and over 60 days after Plaintiff's election to receive pension benefits that Plaintiff appealed Hartford's coverage decision.

---

[10] *Id.* at p. 175 (Bates No. 000230).

[11] *Id.* at pp. 177-179 (Bates Nos. 000232-234). These conditions included: degenerative disc disease, inflammatory arthritis, osteoarthritis, morbid obesity, sleep apnea, asthma, migraine headaches, pituitary tumor, pernicious anemia, and urinary incontinence.

[12] *Id.*

[13] Rec. Doc. No. 49-6, p. 69 (Bates No. 00361).

[14] Rec. Doc. No. 49-5, pp. 133-135 (Bates Nos. 000188-190).

Following this denial of benefits, Plaintiff claims that she was forced to sell stock at a low point in the market, incur the expense of an attorney to obtain her disability benefits, apply for early payment of benefits from a pension plan from her previous employer, Dow Chemical Company ("Dow") (thereby incurring penalties for early withdrawal), and preparing her home to be sold at a significant loss.[15] Plaintiff received her first retirement distribution from the Dow pension plan on October 1, 2008. On October 24, 2008, Plaintiff appealed Hartford's denial of her disability benefits. Hartford advised Plaintiff on December 9, 2008, that it had reversed its denial of STD benefits, finding that Plaintiff was, in fact, eligible for STD benefits at the time she became totally disabled.[16] Hartford contends that, with her appeal, Plaintiff submitted additional information including, but not limited to, an Affidavit executed by Plaintiff regarding the date of her disability and employment termination date.[17] Hartford also claims that Plaintiff's employer was interviewed again regarding the effective date of her termination, and, based on additional information obtained, Hartford reversed the original claims decision.

On January 19, 2009, in possession of the Pension Questionnaire which was completed by Plaintiff, Hartford requested additional information relating to Plaintiff's retirement benefit that might be subject to reduction under the "Other Income Benefits" provision of the policy.[18] On April 16, 2009, Hartford determined that Plaintiff was entitled

---

[15] Rec. Doc. No. 49-1, pp. 7-8, ¶ 20.

[16] Rec. Doc. No. 49-5, p. 92 (Bates No. 000147).

[17] Rec. Doc. No. 44-4, p. 6, ¶ 19, citing Rec. Doc. No. 49-5, pp. 93-98 (Bates Nos. 000148-153).

[18] Rec. Doc. No. 49-7, p. 173 (Bates No. 000685).

to LTD benefits as well.[19]  Plaintiff claims this letter was accompanied by a "LTD Benefit Calculation" showing that Plaintiff's gross monthly LTD benefits would be reduced only by social security disability benefits and not by the Dow pension.[20]  Hartford contends it had no knowledge that Plaintiff was receiving funds from the Dow pension until January 9, 2009.

On October 21, 2009, Hartford advised Plaintiff that she owed Hartford $64,884.12 based on its overpayment of LTD benefits after application of the "Other Income Benefits" provision of the policy which provided for an offset of the pension benefits Plaintiff had received.  Hartford requested this reimbursement within fifteen (15) days.[21]  Through her counsel, Plaintiff challenged Hartford's request for overpayment recovery on the basis that Hartford's "improper withholding and denial of disability benefits" was the reason Plaintiff withdrew from the Dow pension.[22]  On March 21, 2011, Hartford responded that, after review, its request for overpayment recovery was "proper and in accordance with the Policy provisions."[23]  When Plaintiff failed to refund the contested overpayment, Hartford applied future benefits otherwise payable to Plaintiff to the reduction of the overpayment, retroactive to the date Plaintiff's entitlement to pension benefits began.

Dissatisfied with this result, Plaintiff filed this lawsuit on December 6, 2011, pursuant

---

[19] *Id.* at p. 11 (Bates No. 000523).

[20] *Id.* at p. 14 (Bates No. 000526).

[21] Rec. Doc. No. 49-5, pp. 56-58 (Bates Nos. 000111-113).

[22] Rec. Doc. No. 49-6, pp. 179-80 (Bates Nos. 000471-472).

[23] Rec. Doc. No. 49-5, p. 39 (Bates No. 000094).

to 29 U.S.C. § 1132(e)(1) of the Employment Retirement Income Security Act of 1974 ("ERISA").   In summary, Plaintiff claims that she did not receive her STD payments until she appealed Hartford's initial decision with the assistance of counsel, and over a year and a half after the benefits were due.  Plaintiff further claims that she was forced to withdraw her retirement funds due to the erroneous denial.  Hartford reversed its decision and approved Plaintiff's STD benefits; however, Plaintiff contends that the reversal was based on no new facts or evidence.  Plaintiff also contends that the retirement funds Hartford offset were not withdrawn "because of disability" but rather because of Hartford's "admitted wrongful withholding of STD payments."[24]

The parties have filed cross-motions for summary judgment.  The Court now turns to a discussion of the applicable law governing this case.

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[25]  The Supreme Court has interpreted the plain language of Rule 56© to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[24] Rec. Doc. No. 49-1, p. 13, ¶ 33.

[25] Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996);  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

and on which that party will bear the burden of proof at trial."[26]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[27]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[28]

If the moving party meets this burden, Rule 56© requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[29]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[30]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[31]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[32]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue

---

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[27] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[28] *Id.* at 1075.

[29] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[30] *Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[31] *Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[32] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

for trial.[33]

## B.    ERISA

ERISA regulates any "employee welfare benefit plan" which, under the terms of ERISA, is defined in pertinent part, as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, ...[34]

It is undisputed that ERISA governs Plaintiff's claims and the Policy and Plan at issue.  It is also undisputed that the Plan vests Hartford with discretionary authority to determine eligibility for benefits.   "Standard summary judgment rules control in ERISA cases."[35]   Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36]

### 1.    ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)[37]

Plaintiff's *Complaint* states a claim under Section 1132(a)(1)(B) to recover benefits

---

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[34] 29 U.S.C. § 1002(1).

[35] *Cooper v. Hewlett–Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (quoting *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004)).

[36] Fed. R. Civ. P. 56(a).

[37] Plaintiff refers to ERISA Sections 502(a)(1)(B) and 502(a)(3) while Defendant refers to 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3).  The Court will sometimes refer these corresponding sections interchangeably.

she claims are due under the terms of the Plan. However, in her *Memorandum in Opposition to the Defendant's Motion for Summary Judgment and Incorporated Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment*, Plaintiff concedes that she "does not have a valid ERISA § 504(a)(1)(B) claim."[38] Rather, Plaintiff proceeds to argue a claim under ERISA § 502(a)(3) for Hartford's alleged breach of fiduciary duty for its alleged misrepresentation to Plaintiff that she was ineligible for STD benefits when she was in fact eligible, and Hartford's failure to timely approve the payment of these benefits, which resulted in Plaintiff's early withdrawal of her Dow pension benefits.

Hartford responds that Plaintiff's only appropriate avenue of relief is under Section 1132(a)(1)(B), and she is foreclosed by law from asserting a duplicative claim for equitable relief under Section 1132(a)(3). Hartford objects to Plaintiff's alleged attempt to "re-package" her benefits claim as one for equitable relief now that it is clear she cannot prevail under the original theory. Hartford also maintains that, because this claim was not alleged in the *Complaint* but only asserted in her opposition to a summary judgment motion, this claim is not properly before the Court.

Plaintiff counters that she is not pursuing simultaneous remedies but, rather, is requesting equitable relief as her only available remedy under ERISA: "Hartford actually paid Dr. Browdy the benefits for which she was entitled under the plan, despite the mishandling of the claims, misrepresentations, and the unreasonable delay. Instead, Dr. Browdy brings these claims to obtain disgorgement or to prevent unjust enrichment as a

---

[38] Rec. Doc. No. 49, p. 14.

result of Hartford's bad acts."[39]  Plaintiff also maintains that, while she did not directly cite to Section 502(a)(3), she did clearly allege a breach of fiduciary duty "to the extent not preempted by federal law," and also pled factual allegations to support such a claim in her *Complaint.*[40]  Because courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used,[41] the Court will consider this claim to be properly before the Court.

### 2.     Equitable Relief under Section 502(a)(3), 29 U.S.C. § 1132(a)(3)

Until recently, controlling jurisprudence was clear that, in the Fifth Circuit, "there [was] also no cause of action for extra-contractual damages under § 1132(a)(3)."[42]  The damages Plaintiff seeks for the reduced value of her pension have been held to be such extra-contractual damages.[43]  There was likewise no recovery available for the "economic side effects"[44] which resulted from an adverse benefits determination which would have applied to Plaintiff's claims regarding selling stock at a low point in the market, hiring an attorney, and selling her home at a loss.  However, following the Supreme Court's decision

---

[39] Rec. Doc. No. 62, p. 6.

[40] Rec. Doc. No. 1, ¶ 60.

[41] *See Gearlds v. Entergy Services, Incorp.*, 709 F.3d 448, 452 (5th Cir. 2013), citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996).

[42] *Harrell v. Fidelity Sec. Life Ins. Co.*, No. 07-1439, 2008 WL 170269, at *3  (E.D. La. Jan. 16, 2008), citing *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1464 (5th Cir.1986); *Corcoran v. United Health Care Inc.*, No. 90-4303, 1991 WL 353841 (E.D.La. Apr. 3, 1991).

[43] *See Gates v. Hartford Life Group Insurance Company*, No. H-06-1835, 2006 WL 2981191, at *4  (S.D. Tex. Oct. 16, 2006)(In a case where plaintiff sought to recover, among other things, the lost value/reduction in his pension benefits, the court held that "the mental and economic side effects for the benefits termination amounts to a claim for extracontractual compensatory damages" which was precluded by ERISA).

[44] *Id.*

in *CIGNA Corp. v. Amara*[45] and the Fifth Circuit's decision in *Gearlds v. Entergy Services, Inc.,*[46] the Court finds that Plaintiff may have a viable claim for equitable relief.

In *Amara*, a group of employees sued their employer and their pension plan because the employer misled the employees about the conversion of a defined benefit retirement plan into a cash benefit plan with less generous benefits.[47] After finding that the defendant had intentionally misled the employees, the district court reformed the terms of the plan, requiring the plan administrator to pay to the already retired beneficiaries money owed to them under the plan as reformed.[48] The Supreme Court held that Section 1132(a)(1)(B) did not authorize the relief awarded by the district court because it did not allow the plan to be reformed.[49] Nevertheless, the Court held that relief could be available under Section 1132(a)(3) because, even though the district court's remedy was in the form of money damages, such relief was not beyond the scope of equity since "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."[50] The Court noted that this relief was commonly known as "surcharge." Observing that defendant's position as a fiduciary was analogous to a trustee, the Court held that "an award of make-whole

---

[45] — U.S. —, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011).

[46] 709 F.3d 448 (5th Cir. 2013).

[47] *Cigna*, 131 S.Ct. at 1870.

[48] *Id.* at 1874-76, 1879-80.

[49] *Id.* at 1876-77.

[50] *Id.* at 1880.

relief" in the form of surcharge was within the scope of "appropriate equitable relief" under Section 1132(a)(3).[51]

In *Gearlds*, the Fifth Circuit considered whether a district court erred in dismissing a claim for breach of fiduciary duty under Section 502(a)(3) because the plaintiff sought only monetary damages, which the district court concluded was not an available equitable remedy under section 502(a)(3).[52]  The plaintiff in *Gearlds* was on long-term disability for several years, but those benefits ended because he was no longer deemed disabled.[53]  His employer did not officially terminate his employment after his long-term disability ended, but it did not pay him either.  Three years later, the plaintiff took early retirement.  When his employer calculated his early retirement benefits under their plan, it erroneously believed that the plaintiff had been receiving long-term disability benefits for the previous three years.  Under this incorrect assumption, the employer determined that the plaintiff was entitled to medical coverage as part of his early retirement package.  If the three years had not been included, the plaintiff would not have been entitled to medical coverage.[54] When the employer realized there was an error, it advised the plaintiff that his medical coverage would cease.[55]  The plaintiff filed suit under section 502(a)(3) of ERISA, seeking past and future medical expenses, interest, attorneys' fees, costs, and any other relief to which he

---

[51] *Id.*

[52] *Gearlds*, 709 F.3d at 449-50.

[53] *Id.* at 449.

[54] *Id.*

[55] *Id.* at 450.

was entitled.[56] The district court determined that the monetary damages the plaintiff sought were not available under section 502(a)(3). On appeal, the Fifth Circuit noted that, until *Amara,* it had generally been accepted that monetary damages were not within the scope of section 502(a)(3).[57] The Fifth Circuit stated that following *Amara*, a determination of whether the damages sought are monetary "is not the end of the inquiry into equity" with regard to section 502(a)(3).[58] The Fifth Circuit concluded that even though the plaintiff did not expressly plead "surcharge," the plaintiff had, in seeking equitable relief to which he was entitled, stated a plausible claim for relief.[59] The court remanded the case to the district court so that it could determine whether the plaintiff could prevail on the merits of his breach of fiduciary duty claim.[60]

While the *Amara* and *Gearlds* decisions clearly changed the landscape of many Section 502(a)(3) claims, "neither case changes the general rule that if relief is available under Section 502(a)(1)(B), equitable relief is not available under section 502(a)(3)."[61] In this case, Hartford contends that Plaintiff's claim under Section 502(a)(3) is merely a re-packaged claim for the same relief available under Section 502(a)(1)(B). The Court is inclined to agree, particularly since the Court's evaluation of Plaintiff's claims requires the

---

[56] *Id.*

[57] *Id.*

[58] *Id.* at 452.

[59] *Id.*

[60] *Id.*

[61] *Lopez v. Liberty Life Assurance Company of Boston*, No. H-13-2460, 2013 WL 5774878, at *4 (S.D. Tex. Oct. 24, 2013).

determination of whether Hartford abused its discretion in the original denial which is necessarily a Section 502(a)(1)(B) analysis. However, Plaintiff has conceded that she cannot make a claim for benefits due under Section 502(a)(1)(B) because, in fact, she has received the benefits due under the terms of the Plan. Essentially, the claim now before the Court is not one to recover plan benefits but rather consists of requested equitable relief in the form of compensatory money damages for alleged losses Plaintiff sustained as a result of the alleged breach of fiduciary duty by Hartford. Mindful of the changes in the law, and out of an abundance of caution, the Court will evaluate the merits of Plaintiff's breach of fiduciary duty claim under Section 502(a)(3).

### 3. Breach of Fiduciary Duty under ERISA

ERISA § 404(a) requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits to participants and their beneficiaries...." The fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims...."[62] The fiduciary must also act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter...."[63] The Seventh Circuit has emphasized that the fiduciary duty imposed by ERISA "is far more

---

[62] 29 U.S.C. § 1104(a)(1)(B).

[63] 29 U.S.C. § 1104(a).

exacting than the duty imposed by tort law not to mislead a stranger."[64]  In other words, the

> burden of proving fraud is heavier than that of proving a breach of fiduciary
> duty.... Such a breach might consist [of] imprudent management (for
> example, failure to diversify), mistake, self-dealing and other conflicts of
> interest, or failure to remedy breaches of a fiduciary duty by a co-fiduciary-all
> examples of misfeasance rather than malfeasance, involving no
> misrepresentations, and in short, falling short of fraud.[65]

In this case, Plaintiff claims that Hartford failed to discharge its duties in the sole

interest of Plan participants and beneficiaries, and failed to exercise the care, skill,

prudence, and diligence required by ERISA in handling her claim.  Hartford disputes all of

Plaintiff's claims under a theory of breach of fiduciary duty.

a.    *Fiduciary Status*

First, Hartford contends it is not a fiduciary owing any duty to Plaintiff because it is

not the Plan Administrator under the Policy, which clearly provides that Aerospace Testing

Alliance-Salaried is the Plan Administrator.[66]    Plaintiff counters that Hartford's own

statements in this case acknowledge its authority to grant or deny benefits claims under the

Plan at issue.  As such, Plaintiff argues Hartford is a fiduciary as contemplated by ERISA

and does owe a fiduciary duty to Plaintiff.

ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises
> any discretionary authority or discretionary control respecting management
> of such plan or exercises any authority or control respecting management or
> disposition of its assets, (ii) he renders investment advice for a fee or other

---

[64] *Harzewski v. Guidant Corp.*, 489 F.3d 799, 805-06 (7th Cir. 2007).

[65] *Id.* at 805.

[66] *See* Rec. Doc. No. 44-1, p. 62 (Bates No. 000049).

compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.[67]

ERISA requires every employee benefit plan to be established pursuant to a written instrument containing the names of one or more plan fiduciaries.[68] However, a person or entity not named in the plan may become a "functional fiduciary" by exercising decision-making authority or control over the plan.[69] Thus, a person not named in the plan may become a fiduciary by managing or administering the plan.[70]

Nonetheless, a person is only considered a fiduciary when acting in a fiduciary capacity.[71] Thus, "fiduciary status is to be determined ... not only by reference to particular titles such as 'plan administrator,' ... but also by considering the authority which a particular person or entity exercises over the employee benefit plan at issue."[72] A defendant's fiduciary status is therefore "correlative with the scope of [its] duties."[73]

The Fifth Circuit has stated that, "[w]e recognize, of course, that '[a]n entity which

---

[67] 29 U.S.C. § 1002(21)(A).

[68] 29 U.S.C. § 1102(a)(1).

[69] *In re Dynegy, Inc. ERISA Litig.*, 309 F.Supp.2d 861, 872–73 (S.D.Tex. 2004); *see also Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 251 (5th Cir. 2008) ("Fiduciary duties may thus arise either from the terms of the governing plan or from acts and practices in carrying it out.").

[70] *See Varity Corp. v. Howe*, 516 U.S. 489, 502, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

[71] *See Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 418 (5th Cir.1990).

[72] *Id.*

[73] *Kirschbaum*, 526 F.3d at 251.

assumes discretionary authority or control over plan assets will not be considered a fiduciary if that discretion is sufficiently limited by a pre-existing framework of policies, practices and procedures.'"[74]   A third-party administrator who merely performs ministerial duties or processes claims is not a fiduciary.[75]   The authority to grant, deny, or review denied claims can, however, make one a fiduciary.[76]

Hartford's *Statement of Undisputed Material Facts In Support of Motion for Summary Judgment* contains the following statement: "By its explicit terms, the Policy provides that Hartford has 'full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [Policy].'"[77]   Additionally, Hartford claims that it "was designated with claims administration responsibilities under the Policy and rendered the decisions with respect to Plaintiff's claim for disability benefits."[78]   Nowhere does Hartford argue or contend that its discretion is sufficiently limited by any pre-existing framework of policies, practices, or procedures, or that it merely performs ministerial duties. Rather, the scope of Hartford's authority appears to be that of great discretion especially

---

[74] *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995)(quoting *Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991), *cert. denied*, 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993).

[75] *Kyle Rys. v. Pacific Admin. Serv. Inc.*, 990 F.2d 513, 516 (9th Cir.1993).

[76] *Id.* at 517–18; *Pacificare Inc. v. Martin*, 34 F.3d 834, 837–38 (9th Cir. 1994)(ERISA plan health insurer who had discretionary authority to approve or deny claims could bring action pursuant to ERISA); *Tregoning v. American Community Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir.1993) (employer who had sole authority under plan documents to determine the benefits to which insured person may be entitled was fiduciary; employer's authority to grant or deny claims was crucial factor that made it fiduciary within § 1002(21)(A)(iii)), *cert. denied*, 511 U.S. 1082, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994).

[77] Rec. Doc. No. 44-4, p. 2, ¶ 4.

[78] *Id.* at ¶ 5.

considering Hartford's statements above.  Thus, the Court finds that Hartford is a fiduciary for the purposes of ERISA.

b.    <em>Misrepresentation</em>

Plaintiff contends that Hartford breached its fiduciary duty by making a material misrepresentation to the Plaintiff that she was ineligible for STD benefits when Plaintiff claims there was evidence in Hartford's possession showing that she was clearly eligible. Plaintiff claims this misrepresentation violated Hartford's duty of loyalty as it denied her claim for STD benefits without using the necessary care and skill required by ERISA. Hartford again insists that Plaintiff's misrepresentation claim is merely a "re-packaged benefits claim" because it is based on the fact that Hartford originally denied Plaintiff's STD benefits claim.  As such, Hartford argues that the alleged wrongful denial of benefits is squarely covered by Section 1132(a)(1)(B) as a true benefits claim which precludes Plaintiff from bringing a Section 1132(a)(3) breach of fiduciary duty claim as a matter of law. Substantively, Hartford claims that simply because it reversed its decision regarding STD benefits eligibility on appeal, clearly based on new information before it on appeal, does not constitute a misrepresentation as opposed to simply being incorrect.  Additionally, Hartford contends that it never denied benefits on the finding that Plaintiff was not disabled; rather, the denial was based solely on her eligibility.[79]  Hartford maintains that its initial determination was justified by the administrative record before it at the time, and, although arguably disputable, it was not an arbitrary or capricious decision or an abuse of discretion

---

[79] Rec. Doc. No. 54, p. 25, n 33.

but a proper application of the terms of the Policy.

The Court finds that there is no evidence in the record to support Plaintiff's claim that Hartford made a misrepresentation in bad faith regarding Plaintiff's eligibility for benefits. Simply reversing a previous decision on appeal does not constitute misrepresentation, and Plaintiff has not submitted, and the Court not found any binding or persuasive authority to suggest that it does. Plaintiff has cited to no specific evidence in the record demonstrating bad faith; rather, Plaintiff bases this claim on the simple fact that Hartford initially denied her STD benefits and later reversed this decision. Plaintiff contends there was no new information before Hartford at the time of the appeal;[80] however, Hartford has pointed to evidence in the record that new information and evidence prompted the reversal. Specifically, Hartford based its reversal on both Plaintiff's *Affidavit* submitted during the appeal process and Hartford's subsequent interview with Plaintiff's employer regarding her termination date.[81] Hartford contends this new information justified reversal of its initial determination and required awarding Plaintiff STD benefits. Moreover, the Court notes that, even if the initial denial was erroneous, "while there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable."[82]

Further, the Court finds that this case is factually distinguishable from both *Amara* and *Gearlds* due to a lack of bad faith and intentional misrepresentation of Plan terms. In

---

[80] Despite Plaintiff's insistence that this evidence was already in Hartford's possession, she never directs the Court to the specific documentation in the Administrative Record that would establish this point.

[81] *See* Rec. Doc. No. 49-6, pp. 58-60 (Bates Nos. 000350-352).

[82] *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004).

*Amara*, the employer misled the employees about the terms of their retirement plan benefits. In *Gearlds*, the plaintiff retired early based on the written and oral assurances from his employer that his medical benefits would continue, and his medical benefits were discontinued five years later. Both cases involved actual bad faith and/or intentional misrepresentations of Plan terms, and stand for the proposition that misrepresentations can form the basis for breach of fiduciary duty claims. Unlike *Amara* and *Gearlds*, here, the Plaintiff has not alleged that Hartford misrepresented Plan terms to her; instead, she argues that the claims determination itself of her ineligibility was a misrepresentation because she was later found to be eligible. The foundation for all of Plaintiff's claims is the initial denial of STD benefits, which, quite frankly, supports Hartford's argument that the adequate remedy for these claims falls under Section 1132(a)(1)(B). In any event, Plaintiff has failed to carry her burden on summary judgment of showing that Hartford's initial denial constituted a misrepresentation. Hartford is entitled to summary judgment on this claim.

### c. Conflict of Interest and Unjust Enrichment

Plaintiff also claims that Hartford has a "clear structural conflict of interest" in this case because it is the entity that both evaluates and pays benefits under the terms of the Plan. Thus, Plaintiff contends that Hartford's initial denial of her STD benefits was driven by this conflict of interest that resulted in Hartford's best financial interests. Specifically, Plaintiff claims that it was in Hartford's best economic interests to deny her claim because it compelled Plaintiff to withdraw her pension benefits and ultimately benefitted Hartford by allowing it to offset the amounts drawn from the pension. Plaintiff further argues that

Hartford was unjustly enriched by its alleged misrepresentation that she was ineligible for benefits based on the $64,884.12 overpayment amount later charged to Plaintiff.

Hartford counters that the structural conflict of interest in this case played no significance in its initial denial of Plaintiff's STD benefits. Hartford further contends its original denial was supported by the administrative record and the application of the Policy terms to the facts of the case as understood by Hartford at that time. Furthermore, Hartford argues that it was unaware of Plaintiff's Dow pension at the time of the denial; thus, it is impossible to impute bad faith to Hartford for knowledge it did not have.[83] Hartford also argues Plaintiff has presented no evidence to support her contention that any conflict of interest played a role in the initial denial of her claim. With respect to Plaintiff's unjust enrichment claim, Hartford contends that this argument lacks merit because Hartford was entitled to offset Plaintiff's Dow pension under the express terms of the "Other Income Benefits" provision of the Policy whether she had applied for those benefits or not under the Other Income Benefits language of the Policy. Therefore, Hartford argues it did not have to withhold Plaintiff's STD benefits in order to allegedly force Plaintiff to draw on her Dow pension since Hartford clearly had the right to offset the STD benefits by the amount available from the pension even if she had never applied for them.

Where, as here, the insurance carrier is also the claims administrator, courts have recognized that an inherent conflict of interests exists. However, following the Supreme

---

[83] *See* Rec. Doc. No. 49-5, pp. 56-58 (Bates Nos. 000111-113).

Court's decision in *Metropolitan Life Insurance Co. v. Glenn*,[84] the Fifth Circuit joined the majority of the other circuits in repudiating application of a "sliding scale" standard of review of discretionary plan determinations where a possible conflict exists, and adopted the unitary abuse of discretion standard, weighing any conflict as a factor in that determination.[85] The Fifth Circuit has explained that, "[i]n deciding how much weight to afford the apparent conflict here, we are guided by our decisions in *Holland* and *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465 (5th Cir. 2010).[86] In *Schexnayder*, we explained our application of the *Glenn* test:

> In reviewing the plan administrator's decision, we take into account ... several different considerations. These factors are case-specific and must be weighed together before determining whether a plan administrator abused its discretion in denying benefits. Any one factor may act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.
>
> The interaction between the factors and the substantial evidence test is a relatively new issue after the Supreme Court's decision in *Glenn*. We have considered the interplay in only one prior published decision—*Holland*—in which we found that the conflict of interest was a minimal factor and that the evidence was more than sufficient to support the denial of benefits. However, a reviewing court may give more weight to a conflict of interest, where the circumstances surrounding the plan administrator's decision suggest "procedural unreasonableness."[87]

---

[84] 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

[85] *Holland v. Int'l Paper Co. Ret. Plan,* 576 F.3d 240, 247 n. 3 (5th Cir. 2009).

[86] *Crowell v. CIGNA Group Ins.*, 410 F. App'x 788, 793-94 (5th Cir. Nov. 7, 2011).

[87] *Id.* at 793, quoting *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 469(5th Cir. 2010) (citations and internal quotation marks omitted).

With these guidelines in mind, the Court finds that Plaintiff has failed to show that the structural conflict of interest played a role in the original denial of her STD benefits, especially in light of Hartford's reversal and award of these benefits after new information was presented on appeal.

Furthermore, the Court agrees that Hartford was not unjustly enriched because, under the clear language of the Policy's Benefits section, Hartford was entitled to an offset of the Dow pension whether Plaintiff applied for those funds or not. This provision reads: "The amount of any Weekly Benefit payable shall be reduced by the total amount of all Other Income Benefits, including any amount for which you could collect but did not apply."[88] Moreover, the Dow pension met the Policy's definition of a Retirement Plan that could be subject to this offset.[89] Thus, Hartford was not unjustly enriched by initially denying Plaintiff's claim for STD benefits because it could have offset the Dow pension funds whether Plaintiff applied for them or not. Notably, Plaintiff has not pointed to any summary judgment evidence to suggest that Hartford had any knowledge of the Dow pension at the time of the initial denial of STD benefits. The Court finds that both Plaintiff's claims of unjust enrichment and that a conflict of interest formed the basis for the initial denial are without merit and unsupported by the record. Accordingly, Hartford is entitled to summary judgment on these claims.

---

[88] Rec. Doc. No. 44-1, p. 31 (Bates No. 000018).

[89] *Id.* at p. 59 (Bates No. 000046).

Plaintiff also claims that Hartford breached its fiduciary duty by failing to timely approve and pay her STD benefits.  Plaintiff cites 29 C.F.R. § 2560.503-1(f)(3) to support her claim that Hartford had only forty-five (45) days to make a determination of her claim, and could only extend this period by two, thirty (30) day periods after notifying Plaintiff of such extension.   Plaintiff alleges that Hartford took approximately one hundred and sixty (160) days to render a determination regarding her STD benefits, which was fifty-five (55) days past the maximum 105 day period permitted.  In addition, Plaintiff contends Hartford never notified her of its intention to exceed the original forty-five (45) day period.

Hartford does not appear to challenge Plaintiff's calculations in this regard, but argues that there is no cause of action for alleged untimely processing and payment of claims as a matter of law pursuant to the United States Supreme Court's decision in *Massachusetts Mutual Life Insurance Co. v. Russell.*[90]  The Court agrees.

In *Russell*, the Supreme Court held that "[n]othing in [29 C.F.R. § 2560.503–1] or [ERISA § 503] ... expressly provides for a recovery from either the plan itself or from its administrators if greater time is required to determine the merits of an application for benefits.  Rather, the regulations merely state that a claim may be treated as having been denied after the [time] period has elapsed."[91]   Because monetary damages are not available under this federal regulation, Plaintiff's claims for monetary damages associated

---

[90] 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

[91] *Id.* at 144.

with Hartford's alleged time violation must be dismissed.

### 4.    State Law Claims are Preempted

Section 1144(a) of ERISA provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan."[92] The Fifth Circuit applies a two part test when determining whether a state law claim is preempted by ERISA.[93]   First, the court determines "whether the benefit plan at issue constitutes an ERISA plan."[94]   Second, the court determines whether the state law claims " 'relate to' the plan."[95]   In general, a state law relates to an ERISA plan "whenever it has 'a connection with or reference to such a plan.'"[96] Furthermore, the United States Supreme Court has found that ERISA preempts state law tort and contract claims for improper processing of a claim for benefits.[97]   "The language of the ERISA preemption clause is deliberately expansive, and has been construed broadly by federal courts."[98]

In her *Complaint*, Plaintiff asserts, "to the extent not preempted by federal law, claims of breach of contract, breach of fiduciary duty, bad faith, and unfair trade practices

---

[92] 29 U.S.C. § 1144(a).

[93] *Hernandez v. Jobe Concrete Prods.*, 282 F.3d 360, 362 n. 3 (5th Cir. 2002).

[94] *Id.*

[95] *Id.*

[96] *Hubbard v. Blue Cross & Blue Shield Ass' n*, 42 F.3d 942, 945 (5th Cir.1995) (quoting *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1328-29 (5th Cir. 1992), *abrogated on other grounds by Mertens v. Hewitt Assoc.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993))).

[97] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

[98]  *Hubbard*, 42 F.3d at 945 (citing *Corcoran*, 965 F.2d at 1328–29).

against Hartford..."[99] Despite this, Plaintiff fails to argue in any memoranda that she is entitled to relief under these claims and that they are not preempted by ERISA. Therefore, summary judgment is granted in favor of Hartford on all state law contract and tort claims asserted.

### 5. The Plan is dismissed as a Defendant

Hartford also contends the Plan is only a nominal defendant in this case and should be dismissed with prejudice as Plaintiff's *Complaint* makes no allegations against the Plan itself. Plaintiff concedes that summary judgment in favor of the Plan is appropriate since she has abandoned her claim under Section 1132(a)(1)(B).[100] Accordingly, summary judgment is granted in favor of the Plan, and the Plan is dismissed with prejudice from this action.

---

[99] Rec. Doc. No. 1, p. 19, ¶ 60.

[100] Rec. Doc. No. 62, p. 8.

## III.    CONCLUSION

For the reasons set forth above, *Motion for Summary Judgment*[101] by the Defendants[102] is GRANTED, and Plaintiff's *Motion for Summary Judgment*[103] is DENIED. Hartford's *Motion in Limine*[104] is DENIED without prejudice as moot.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>October 30, 2014</u>.

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[101] Rec. Doc. No. 44.

[102] The Court is referring to Hartford and the Plan.

[103] Rec. Doc. No. 50.

[104] Rec. Doc. No. 55.